OPINION OF THE COURT
 

 Per Curiam.
 

 This appeal concerns the interpretation of Election Law § 16-110 (2),
 
 *
 
 allowing cancellation of the enrollment of a member of a political party after a finding that the party enrollee is not in sympathy with party principles. Because we conclude that the political party’s determination was based both on evidence subject to immunity conferred by the Speech or Debate Clause of the New York State Constitution (art III, §11) and on independent nonprivileged evidence, we reverse the order of the Appellate Division and remit for further proceedings consistent with this opinion.
 

 
 *427
 
 On February 4, 2002, Pedro Espada, Jr., a Democratic State Senator from the 32nd Senatorial District in Bronx County, publicly announced at a press conference called by Senate Republicans, his intention to change his party affiliation and join the Republican Party. He joined the State Senate’s Republican Conference, declaring his “political emancipation” from the Democratic Party. At a televised press conference, Senator Espada “affirm [ed] and declare [d]” his intent to enroll as a Republican. He later made a number of other statements to the print and broadcast media evincing his intention to enroll as a Republican. A Republican National Committee letter announced the event. Additionally, a number of Republican Web sites characterized Espada as a new party member, and he discussed his intended new affiliation on a local radio show.
 

 Despite his declared intention, Espada ultimately deferred his enrollment in the Republican Party. In a New York Times article, he explained: “I learned that it would take a year for my change in registration to take effect * * * [s]o I have opted to file the papers to run in the Democratic primary. * * * I will re-enroll as a Republican at a later time, maybe even later this year.”
 

 In April 2002, Democratic Party members filed a written complaint with the Bronx Democratic County Committee seeking the cancellation of Senator Espada’s party enrollment. The County Committee conducted a hearing concerning the cancellation of Espada’s enrollment, and on July 10, 2002, a determination was made concluding that Espada was not in sympathy with the principles of the Democratic Party and he was expelled from the party.
 

 Petitioners thereafter filed an application in Supreme Court, seeking an order to direct the Board of Elections to cancel Espada’s party enrollment pursuant to Election Law § 16-110 (2). Supreme Court granted the petition and cancelled his Democratic enrollment. Espada appealed and the Appellate Division reversed on the law (297 AD2d 251 [2002]), holding that evidence of privileged legislative activity was improperly received at the hearing thus tainting the entire determination, and, in any event, that the determination was not “just.” Accordingly, the Court not only reversed, but also dismissed the petition and ordered that Espada’s Democratic enrollment be reinstated. Two Justices dissented finding that Espada’s unprivileged statements and conduct were sufficient to support the petition. Petitioners appeal to this Court as of right pursuant to CPLR 5601.
 

 
 *428
 
 As a threshold issue, respondents and intervenors attempt to limit the scope and applicability of section 16-110 (2) to the prevention of “raids” on political parties. Contrary to respondents’ assertions, neither a plain reading of the statute, nor our case law limits section 16-110 (2)’s applicability to party raiding
 
 (see generally Matter of Zuckman v Donohue,
 
 191 Misc 399,
 
 mod
 
 274 App Div 216 [3d Dept],
 
 affd
 
 298 NY 627 [1948]).
 

 Respondents and intervenors are correct in noting the involvement of the Speech or Debate Clause of the New York State Constitution. It provides: “For any speech or debate in either house of the legislature, the members shall not be questioned in any other place” (NY Const, art III, § 11). A legislator is therefore afforded immunity from any proceeding challenging lawful action taken in his or her official capacity
 
 (see People v Ohrenstein,
 
 77 NY2d 38, 53-54 [1990]).
 

 A review of the record before us indicates that the hearing evidence, as well as the findings and conclusions of the Chair of the Bronx Democratic County Committee before whom the hearing was held, were significantly based upon actions that were constitutionally immune from sanction. The record reveals there was substantial hearing testimony regarding Senator Espada’s participation in Senate Majority Conference activities, his voting record on legislation, the change in his seating in the Senate Chamber and other legislative conduct. This conduct was privileged and should not have been considered in the party Chair’s determination. To the extent that Espada’s expulsion was based on such acts, it cannot stand.
 

 We disagree, however, with the Appellate Division majority’s determination that Espada’s unprotected conduct was insufficient as a matter of law to merit expulsion. The law is clear that the Speech or Debate Clause is not so broad as to protect “acts which a legislator performs to secure support in the community or to insure reelection, such as giving speeches in the community [and] issuing newsletters and press releases”
 
 (People v Ohrenstein,
 
 77 NY2d 38, 54 [1990];
 
 see also Hutchinson v Proxmire,
 
 443 US 111 [1979]). It is this type of other non-legislative activity that must be examined here.
 

 Election Law § 16-110 (2) assigns the task of determining whether a voter “is * * * in sympathy with the principles” of his or her political party to a leader of that party — the County Committee Chair — and limits courts to deciding whether this determination is “just.” This division of responsibility reflects a
 
 *429
 
 legislative choice not to involve courts in determining party “principles.” Thus, the court’s role is to ensure that the County Committee Chair reaches a decision on the basis of sufficient evidence and does not consider inappropriate factors.
 

 In
 
 Matter of Mendelsohn v Walpin,
 
 Supreme Court, in determining whether a voter was in sympathy with the purpose of a potential party, and whether the determination of a party leader was just, noted:
 

 “In so holding I do not mean that a voter may not change his party as he sees fit; that he may not enter a party for the sole purpose of seeking nomination and election; that he may not disagree with the party in its choice of candidates; that he may not criticize the party leadership and try to change it; or that he may not even oppose candidates of the party in an election. He may do any or all of these things and still remain a member of the party provided he is in reality in sympathy with its principles. But where, as I think it has been conclusively shown here, a man is not in reality in sympathy with the principles of a party he is not entitled to enroll in order to further his ulterior motives” (197 Misc 993, 1000,
 
 affd
 
 277 App Div 947,
 
 affd
 
 301 NY 670 [1950]).
 

 Limiting the record before us to statements and conduct not sheltered by the Speech or Debate Clause, a finder of fact might well conclude that Espada was out of sympathy with the principles of the Democratic Party. The record contains evidence, from several public sources, of repeated and consistently maintained statements denouncing the Democratic Party, that could support such a conclusion. We do not assume that the proper finder of fact would or should accord the greatest weight to Espada’s choice ultimately not to change his party enrollment.
 

 However, the proper finder of fact to make this determination is the County Committee Chair. Here, we cannot say what the Chair would have decided on a record purged of statements and conduct sheltered by the Speech or Debate Clause. Such a record would exclude the evidence that relates solely to Espada’s legislative acts or Majority Conference participation.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court with direction to remit to the Chair of the Bronx Democratic County Committee for redetermination.
 

 
 *430
 
 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Graffeo concur in per curiam opinion; Judge Rosenblatt taking no part.
 

 Order reversed, without costs, and matter remitted to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein.
 

 *
 

 Election Law § 16-110 (2) provides, in pertinent part, that
 

 “The chairman of the county committee of a party with which a voter is enrolled in such county, may, upon a written complaint by an enrolled member of such party in such county and after a hearing * * * determine that the voter is
 
 not in sympathy with the principles of such party.
 
 The Supreme Court or a justice thereof within the judicial district, in a proceeding instituted by a duly enrolled voter of the party * * * shall direct the enrollment of such voter to be cancelled if it appears from the proceedings before such chairman or sub-committee, and other proofs, if any, presented, that such determination is
 
 just”
 
 (emphasis added).